UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN E. ERICKSON, SHELLEY A. ERICKSON, and SHELLEY'S TOTAL BODYWORKS DAY SPA/SHELLEY'S SUNTAN PARLOR,<br><br>Plaintiffs,<br><br>v.<br><br>LONG BEACH MORTGAGE CO., WASHINGTON MUTUAL BANK, DEUTSCHE BANK NATIONAL TRUST COMPANY, and CHASE BANK,<br><br>Defendants. | CASE NO. 10-1423 MJP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 51), and Plaintiffs' cross motion for summary judgment (Dkt. No. 82). Having reviewed the motions, Plaintiffs' response (Dkt. No. 81) and replies (Dkt. Nos. 67, 70, 72), Defendants' reply (Dkt. No. 73), and all related documents, the Court GRANTS Defendants' motion, DENIES Plaintiffs' motion, and DISMISSES this action.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 1

**Background**

Plaintiffs John E. and Shelley A. Erickson, husband and wife, used their Auburn home to secure a $476,000 loan currently being serviced by Defendant JP Morgan Chase Bank NA ("Chase"). (Decl. of Thomas Reardon (Dkt. No. 54) at ¶ 4.) Shelley's Total Bodyworks Day Spa and Shelley's Suntan Parlor are sole proprietorships owned by the Ericksons. (Dkt. No. 14. at 2.) Plaintiffs first obtained the loan from Defendant Long Beach Mortgage Co. ("LBMC") on March 3, 2006, and entered into a fixed/adjustable rate note secured by a deed of trust. (Reardon Decl. at ¶ 4.) The loan was then sold into a pool of loans held in trust by Defendant Deutsche Bank National Trust ("DB"). (Id. at ¶ 6.) Defendant Washington Mutual Bank ("WaMu") took over the loan in 2006, when it merged with LMBC, taking over all its rights and obligations. (Id. at ¶ 9.)

After WaMu failed and entered FDIC receivership on September 25, 2008, Chase purchased WaMu assets—including Plaintiffs' loan—under a Purchase and Assumption Agreement ("P & A Agreement"). Purchase and Assumption Agreement Among Federal Deposit Insurance Corporation and JP Morgan Chase Bank, National Association, (Sept. 25, 2008), available at http://fdic.gov/about/freedom/Washington_mutual_p_and_a.pdf. Defendants request the Court follow other district courts in taking judicial notice of the P & A Agreement. (Dkt. No. 51 at 4 n.2.) The Court takes judicial notice of the P & A Agreement "because it is a public record and not the subject of reasonable dispute." Danilyuk v. JP Morgan Chase Bank, N.A., No. C10-0712JLR, 2010 WL 2679843, at *4 (W.D. Wash., July 2, 2010) (collecting cases).

In 2009, Plaintiffs sought to modify their loan through a program provided by Chase. (Id. at ¶ 10.) Plaintiffs claim they were told they must be three months in default to qualify for the

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 2

1  program, but that they avoided falling behind on their loan as long as they could. (Dkt. No. 14 at

2  34.) Chase delivered a "Trial Modification Package" ("Application Package") to Plaintiffs on

3  May 19, 2009, and claims Plaintiffs submitted a "Home Affordable Modification Trial Period

4  Plan" ("Trial Plan") application and hardship affidavit to Chase, signed May 19, and May 20,

5  2009. (Reardon Decl. at ¶ 10.) Although Defendants have produced the signed copy of the

6  affidavit Plaintiffs submitted, the couple claims never to have received the Application Package.

7  (Dkt. No. 14 at 47.) Plaintiffs claim an agent had already told them by phone they were

8  approved for modification in April 2009. (Decl. of Shelley Erickson (Dkt. No. 84) at 4.)

9        The Application Package set out the steps necessary for Plaintiffs to have obtained their

10 loan. It stated generally that Plaintiffs needed to explain their financial hardship, submit required

11 documentation as to income and make timely monthly trial period payments. (Reardon Decl.,

12 Ex. E at 56.) The Application Package stated:

13     If your income documentation does not support the income amount that you
    previously provided in our discussions, two scenarios can occur:
14       1) Your monthly payment under the Trial Period Plan may change
      2) You may not qualify for this loan modification program.
15 (Id.)

16       Plaintiffs received a letter from Chase on May 29, 2009 regarding the Trial Plan. (Dkt.

17 No. 7-1 at 2.) The letter instructed Plaintiffs to pay the modified rate instead of the regular rate

18 during the Trial Plan period, and that "If you make all [3] trial period payments on time and

19 comply with all of the applicable program guidelines, you will have qualified for a final

20 modification." (Id.) Plaintiffs paid the modified rate from June through October 2009.

21 (Erickson Decl. at 4.)

22       On October 13, 2009, Chase sent a letter rejecting Plaintiffs' loan modification due to

23 insufficient credit. (Reardon Decl. at ¶ 11.) Plaintiffs filed suit in King County Superior Court

24 ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 3

1  on August 11, 2010, seeking relief under various state and federal law theories. (Dkt. No. 1 at
2  2.) Defendants removed under this Court's original and supplemental jurisdiction on September
3  2, 2010. (Id.)

4  **Analysis**

5  Both parties move for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiffs'
6  pleadings are vague and difficult to understand, and the Court characterizes the claims as best it
7  can. Plaintiffs' claims fall into two groups: those arising from the March 2006 loan, and those
8  arising after Chase took over servicing the loan in September 2008. The Court only considers
9  the claims in Plaintiffs' second amended complaint, given that Plaintiffs failed to file an
10 amended complaint after having been given leave to file an amended pleading. (Dkt. Nos. 14,
11 45.) Plaintiffs have failed to provide facts sufficient to establish the elements of any of the
12 claims they pursue. Defendants are entitled to relief on their summary judgment motion.

13 A.  Standard

14 Summary judgment is appropriate when a party fails to establish the existence of an
15 essential element of their case for which they bear the burden of proof. Celotex Corp. v. Catrett,
16 477 U.S. 317, 322 (1986). When a non-moving party has made no such showing, "the moving
17 party may simply point to the absence of evidence." In re Brazier Forest Prod. Inc., 921 F.2d
18 221, 223 (9th Cir. 1990). The Ninth Circuit asks courts to give pro se petitioners "the benefit of
19 any doubt" when interpreting their pleadings. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th
20 Cir. 1985). However, conclusory allegations, even when included in a signed affidavit, will not
21 survive summary judgment. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

22 B.  Claims Arising from the 2006 Loan

23
24
ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 4

1    As best the Court can understand from Plaintiffs' pleadings, Plaintiffs advance three

2 claims traceable to LBMC's allegedly deceptive conduct during the loan process, and the

3 invalidity of the note securing Plaintiffs' loan: (1) rescission under the Truth In Lending Act

4 ("TILA"), (2) declaratory or injunctive relief preventing foreclosure, and (3) damages under

5 TILA or various tort theories. These claims are legally barred or lacking in merit.

6    1.    Rescission

7    Plaintiffs' rescission claims are time-barred. Claims for rescission under TILA must be

8 brought within three years of a loan's consummation. 15 U.S.C. § 1635(f). The loan from

9 LBMC was consummated in 2006, more than five years before Plaintiffs filed suit in August of

10 2010. (Reardon Decl. at ¶ 4.) Plaintiff failed to bring suit within three years of their loan's

11 consummation. Plaintiffs cannot pursue a TILA rescission claim. The Court GRANTS

12 Defendants' motion and DISMISSES Plaintiffs' rescission claim under TILA.

13   2.    Declaratory or injunctive relief

14   Plaintiffs assert Defendants are not entitled to foreclose on their house, and appear to

15 seek either a declaration of Defendants' lack of interest in the property, or an injunction against

16 foreclosure. The Court finds no merit to this claim.

17   Plaintiffs' argument rests on the contention that Defendants lack standing to foreclose

18 because they are not the original creditors, and cannot produce the original note. Courts "have

19 routinely held that [this] so-called 'show me the note' argument lacks merit." Freeston v.

20 Bishop, White & Marshall, P.S., No. C09-5560BHS, 2010 WL 1186276 (W.D. Wash. Mar. 24,

21 2010) (quoting Diessner v. Mortg. Elec. Registration Sys., 618 F. Supp. 2d 1184, 1187 (D. Ariz.

22 2009) (collecting cases)). The Court agrees with these cases. More importantly, Defendants

23 provide evidence demonstrating their ownership of the note, which the Ericksons do not credibly

24
ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 5

1  challenge. The Court GRANTS Defendants' motion and DENIES Plaintiffs' motion with

2  respect to claims for a declaration or an injunction against foreclosure. The Court DISMISSES

3  this claim.

4    3. <u>Damages</u>

5    Plaintiffs advance TILA and fraud claims for damages arising from the March 2006 loan

6  process. The Court agrees with Defendants that they are not the proper parties to these claims.

7    When WaMu entered receivership, the FDIC assumed liability associated with borrower

8  claims. <u>Yeomalakis v. F.D.I.C.</u>, 562 F.3d 56, 60 (1st Cir. 2009). Chase "assume[d] all mortgage

9  servicing rights and obligations" from the FDIC. P & A Agreement, § 2.1. However, the P & A

10 Agreement provides that

11   any liability associated with borrower claims for payment of or liability to any
  borrower for monetary relief . . . arising in connection with [WaMu's] lending or
12   loan purchase activities are specifically not assumed by [Chase].

13 <u>Id.</u> at § 2.5. Previous courts considering the P & A Agreement have held that it "reliev[es] Chase

14 of all liability for borrowers' claims relating to loans made by Washington Mutual prior to

15 September 25, 2008." <u>Danilyuk</u>, 2010 WL 2679843, at *4 (collecting cases). The FDIC retains

16 any of WaMu's liability stemming from Plaintiffs' initial loan. Plaintiff has not sued the FDIC,

17 which appears to be the proper party. Plaintiffs have produced no facts supporting claims for

18 damages against DB, and LBMC no longer exists.

19   The Court GRANTS Defendants' motion and DENIES Plaintiffs' motion with respect to

20 all claims for damages relating to the 2006 loan process. The Court DISMISSES these claims

21 for damages.

22 B. <u>Claims Arising After 2008</u>

23

24
ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 6

Plaintiffs appear to pursue nine claims arising out of Defendants' conduct after Chase assumed WaMu's loan servicing obligations. Plaintiffs assert claims for (1) Racketeering Influenced and Corrupt Organizations ("RICO") Act violations, (2) mail fraud, (3) wire fraud, (4) money laundering, (5) Washington's Criminal Profiteering Act violations, (6) fraud, (7) promissory estoppel, and (8) intentional infliction of emotional distress. Plaintiffs have not shown evidence necessary to sustain these claims in the face of Defendants' summary judgment motion.

### 1. RICO

Plaintiffs claim Defendants violated RICO by engaging in mail fraud, wire fraud, and money laundering. Plaintiffs have not shown facts supporting a necessary element of a RICO claim.

To state a claim under RICO, a plaintiff "must allege facts tending to show that he or she was injured by the use or investment of racketeering income." Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co., 981 F.2d 429, 437 (9th Cir. 1992). Allowing recovery without showing harm from racketeering income would "allow recovery for an injury arising from a mere element of a violation, rather than an actual violation." Id.

Plaintiffs point to no facts in the record showing the necessary element of harm caused by Defendants' use or investment of income. The Court GRANTS Defendants' motion and DENIES Plaintiffs' motion with respect to RICO claims. The Court DISMISSES this claim.

### 2. Mail fraud, wire fraud, and money laundering

Plaintiffs have no legal claim for mail fraud, wire fraud, or money laundering independent of RICO. The federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, provide no private cause of action for mail or wire fraud. See, e.g., Blake v. Irwin Mortgage, No.

1  CV-10-2435-PHX-GMS, 2011 WL 98538 (D. Ariz., Jan. 12, 2011).  Similarly, there is no
2  individual cause of action for money laundering under 18 U.S.C. §§ 1956, 1957.  See, e.g., El
3  Camino Resources, LTD. v. Huntington Nat. Bank, No. 1:07-cv-598, 2010 WL 2651617 (W.D.
4  Mich., July 1, 2010).  The Court GRANTS Defendants' motion and DENIES Plaintiffs' motion
5  with respect to independent mail fraud, wire fraud, or money laundering claims.  The Court
6  DISMISSES these claims.

        3.      Criminal Profiteering Act

8  Plaintiffs claim that Defendants violated Washington's Criminal Profiteering Act,
9  Chapter 9A.82 RCW, by engaging in mortgage fraud.  This cause of action cannot be advanced.
10 The Criminal Profiteering Act gives a private remedy to plaintiffs injured by an act of
11 criminal profiteering, including mortgage fraud.  RCW 9A.82.100; RCW 9A.82.010(4)(qq).
12 Until July of 2010, mortgage fraud included fraud or deception "in connection with making,
13 brokering, or obtaining a residential mortgage loan."  RCW 19.144.080 (2008).  The definition
14 of mortgage fraud was extended to include loan modification by an amendment which became
15 effective July 1, 2010.  2010 Wash. Legis. Serv. Ch. 35 § 12 (West).  The amendment contains
16 no legislative intent of retroactive application, and thus does not apply before its effective date.
17 See Howell v. Spokane & Inland Empire Blood Bank, 114 Wn.2d 42, 47 (1990).
18 Because the amendment does not apply retroactively, the Court looks to the statute in
19 effect at the time the allegedly fraudulent behavior occurred.  However, during the time Plaintiffs
20 sought and were ultimately denied loan modification, the earlier version of the statute was in
21 effect—which did not apply to loan modification.  Thus, Plaintiffs cannot establish a Criminal
22 Profiteering Act claim based on mortgage fraud committed by Defendants during the 2009 loan
23 modification process.  Moreover, Plaintiffs have not shown sufficient evidence of deception or

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 8

1  fraud in the modification process, as explained in more detail below. The Court GRANTS

2  Defendants' motion and DENIES Plaintiffs' motion with respect to the Criminal Profiteering Act

3  claim. The Court DISMISSES this claim.

4      4.    <u>Tort claims</u>

5  Defendants argue Washington's independent duty doctrine bars Plaintiffs' tort claims.

6  The Court disagrees with Defendants' broad interpretation of that doctrine.

7  The independent duty doctrine is a facet of Washington's economic loss rule, which

8  precludes tort recovery for purely economic loss within a contractual relationship unless an

9  independent duty can be established. <u>Eastwood v. Horse Harbor Found., Inc.</u>, 241 P.3d 1256,

10  1264 (Wash. 2010). The rule does not bar claims of misrepresentation, non-economic damage,

11  or claims arising independently of a contract. <u>Id.</u> at 1261. Thus, the economic loss rule does not

12  bar Plaintiffs' claims of (1) fraud, (2) promissory estoppel, or (3) intentional infliction of

13  emotional distress. However, as explained below, there are independent reasons for dismissing

14  all of Plaintiffs' tort claims.

15      a.    <u>Fraud</u>

16  Plaintiffs claim Defendants engaged in fraud by misleading them into thinking they had

17  been or would be approved for loan modification. Plaintiffs have not shown facts establishing

18  necessary elements of a fraud claim.

19  A party claiming fraud must show each of nine elements: (1) representation of an existing

20  fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the

21  speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7)

22  plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon it, and (9)

23  damages suffered by the plaintiff. <u>Steineke v. Russi</u>, 145 Wn. App. 544, 563 (2008) (quoting

24  
ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 9

1 Stiley v. Block, 130 Wn.2d 486, 505 (1996)). Plaintiffs' evidence fails to establish the first
2 element.

3 Plaintiffs claim they were told over the phone they were approved for a modification, but
4 offer no specifics or evidence of the call. This conclusory claim is insufficient to raise a genuine
5 issue of fact for summary judgment purposes. Lujan, 497 U.S. at 888. It is also contradicted by
6 the letters Defendants have submitted that clearly show Plaintiffs were only offered the chance to
7 enroll in the loan modification program, not that they had been enrolled. (Reardon Decl., Ex. E
8 at 56.) Plaintiffs' best argument for fraud is the May 29 letter, which implies that three months'
9 timely payment during the Trial Plan would suffice to qualify them for a loan. However, the
10 letter at best is a promise to modify the loan in the future, not an "existing fact." "A promise of
11 future performance is not a representation of an existing fact and will not support a fraud claim."
12 West Coast, Inc. v. Snohomish County, 112 Wn. App. 200, 206 (2002). Because they have
13 shown at best only a future promise, Plaintiffs have not established the first element of fraud.

14 Plaintiffs also have not provided or pointed to any specific facts showing their damages,
15 the ninth element of fraud. It may be that they made higher payments under the Trial Plan than
16 they would have otherwise, but they have provided no evidence of this fact. Moreover, it is
17 unclear how payment on an outstanding debt constitutes damages. However, even with evidence
18 of damages, Plaintiff's fraud claim would fail because they have not provided any evidence to
19 support the first element.

20 The Court GRANTS Defendants' motion and DENIES Plaintiffs' motion with respect to
21 the fraud claim. The Court DISMISSES this claim.

22    b.  <u>Promissory estoppel</u>

23

24
ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 10

1    Plaintiffs claim promissory estoppel based on Defendants' alleged promise of loan

2 modification. Plaintiffs have not shown facts establishing necessary elements of the claim.

3    A party claiming promissory estoppel must show each of five elements: (1) a promise (2)

4 the promisor should reasonably expect to cause the promisee to change position (3) which does

5 cause the promisee to change position (4) justifiably relying on the promise, in such a manner

6 that (5) injustice can only be avoided by enforcing the promise. Havens v. C & D Plastics, 124

7 Wn.2d 158, 171–72 (1994). Plaintiffs' evidence fails to establish the first element.

8    The first element requires a "clear and definite" promise. Id. at 173. A promise which is

9 conditioned on the future signing of documents fails to satisfy this requirement. Pacific Cascade

10 Corp. v. Nimmer, 25 Wn. App. 552, 559 (1980). The defendant in Pacific Cascade executed a

11 letter of intent to enter into a lease, after extended negotiations. Id. at 554–55. Even though the

12 letter clearly expressed the defendant's intent to enter into the lease, the court held it would not

13 support a claim of promissory estoppel. Id. at 559. The court held that even if the letter

14 constituted a promise, "its terms were expressly conditioned upon the subsequent execution of a

15 written document" (the lease), without which the promise was unenforceable. Id.

16    The Plaintiffs have not provided specific evidence sufficient to establish a service agent

17 made a promise over the phone, as explained above. Plaintiffs' best support for their promissory

18 estoppel claim is the May 29 letter. However, that letter at most promises that Defendants would

19 execute a loan modification if Plaintiffs made all trial period payments on time "and compl[ied]

20 with all of the applicable program guidelines." (Dkt. No. 7-1 at 2.) The loan modification would

21 only become effective "[u]pon execution . . . by the Lender and [Plaintiffs]." (Reardon Ex. E., at

22 63.) Because any promise in the May 29 letter was conditioned on future execution of the

23 modification documents, it does not establish the first element of promissory estoppel.

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 11

1     Accordingly, the Court GRANTS Defendants' motion and DENIES Plaintiffs' motion
2 with respect to the promissory estoppel claim. The Court DISMISSES this claim.

3         c. <u>Intentional Infliction of Emotional Distress</u>

4     Plaintiffs contend Defendants' denial of loan modification constitutes intentional
5 infliction of emotional distress ("IIED"). Plaintiffs have not shown facts supporting the
6 necessary elements of an IIED claim.

7     A party claiming IIED must show each of three elements: (1) extreme and outrageous
8 conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to
9 plaintiff of severe emotional distress. <u>Kloepfel v. Bokor</u>, 149 Wn.2d 192, 195 (2003). Plaintiffs'
10 evidence fails to establish the first or second element.

11     "The first element [of IIED] requires proof that the conduct was so outrageous in
12 character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be
13 regarded as atrocious, and utterly intolerable in a civilized community." <u>Robel v. Roundup</u>
14 <u>Corp.</u>, 148 Wn.2d 35, 51 (2002). Default and foreclosure proceedings generally do not rise to
15 the level of extreme and outrageous conduct. See, e.g., <u>Thepvongsa v. Regional Trustee Servs.</u>
16 <u>Corp.</u>, No. C10-1045 RSL, 2011 WL 307364, at *3–4 (W.D. Wash. Jan 26, 2011). Denying a
17 loan modification which might result in foreclosure is no more "outrageous in character" than
18 actually foreclosing. Because Plaintiffs have provided no specific evidence of Defendants'
19 outrageous conduct beyond loan modification denial, they fail to establish the first element of an
20 IIED claim.

21     The second IIED element requires intentional or reckless conduct, not mere bad faith or
22 malice. <u>Dicomes v. State</u>, 113 Wn.2d 612, 631 (1989). Because Plaintiffs offer no specific facts
23 showing Defendants' mental state, they fail to establish the second element of IIED.

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT- 12

1     The Court GRANTS Defendants' motion and DENIES Plaintiffs' motion with respect to the IIED claim. The Court DISMISSES this claim.

### Conclusion

Plaintiffs are not entitled to pursue any of their claims against the Defendants arising from the 2006 loan process. Plaintiffs have also failed to show evidence supporting necessary elements of each of their claims arising from the 2009 loan modification process. Plaintiffs' motion is DENIED with respect to all claims. Given Plaintiffs' failure to show specific facts supporting elements necessary to each of the claims, Defendants' motion is GRANTED with respect to all claims. The Court DISMISSES Plaintiffs' entire action with prejudice.

The clerk is ordered to provide copies of this order to all counsel and Plaintiffs.

Dated this 2nd day of March, 2011.

_/s/ Marsha J. Pechman_
Marsha J. Pechman
United States District Judge